M. Marvin Berger, J.
At a preliminary hearing, held before this court, the defendant was charged with a felony of attempted .sodomy and endangering the welfare of a minor, a misdemeanor.
The charges, contained in the affidavit of the mother of an eight-year-old boy, state that the defendant, seated in an automobile called the child to the car and offered him money to commit an act of sodomy. The hoy rejected the offer and reported the incident to his mother the same day.
At the preliminary hearing, the sworn testimony of the arresting officer supported some details of the boy’s unsworn account.
The child’s evidence, both in chief and under cross-examination, made it clear that the defendant remained in his automobile, drove past the child without stopping or changing the direction of the vehicle, that he kept his hands on the steering wheel and did not expose himself.
*659 The threshold question is whether a verbal solicitation to commit a crime constitutes an attempt to commit .the crime.
Section 110.00 of the Penal Law defines an attempt as follows:
‘ ‘ A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of a crime.”
It derives from section 2 of the old Penal Law which defined an attempt as “ an act, done with intent to commit a crime, and tending but failing to effect its commission”.
According to the annotations in the McKinney’s edition of the Penal Law (Book 39, p. 180), the attempt had to proceed beyond mere preparation and approach consummation of the forbidden act.
The People assert that the defendant, by slowing down his vehicle to keep pace with the infant’s gait and by offering him money to commit fellatio on him, engaged in a direct effort to commit sodomy. By focusing his solicitation on a specific person, the defendant had progressed from preparation — the search for a likely victim of his advances — to an attempt.
People v. Ditchik (288 N. Y. 95, 96 [1942]) frequently cited in decisions dealing with attempts, states: ‘ ‘ Acts in furtherance of a criminal project do not reach the stage of an attempt unless they carry .the project forward within dangerous proximity to the criminal end to be attained. (People v. Werblow, 241 N. Y. 55, 61, 62 ; People v. Collins, 234 N. Y. 355, 359, 360).”
Other cases, principally People v. Rizzo (246 N. Y. 334 [1927]), make it clear that the purpose or intent must be linked to an overt act tending to the commission of the crime albeit not “ the last proximate one for the completion of the offense.” (People v. Sullivan, 173 N. Y. 122, 134 [1903]).
In short, in the words of the Official Draft of the Model Penal Code (§ 5.01) the “ substantial step in a course of conduct planned to culminate in * * * commission of a crime ” must be “ strongly corroborative of the actor’s criminal purpose.”
The court’s inquiry must then focus on whether verbal solicitation of another to engage in criminal conduct is~an attempt to commit a crime.
In the absence of any reported New York case on this point, we must rely on other sources.
The general proposition stated in American Jurisprudence (2d ed., vol. 21, § 113) is as follows: “ Though solicitation may constitute an element in some attempts, the usual view seems to be that soliciting another to commit a crime is not, by itself, *660 sufficient to constitute an attempt to commit that crime. This has been explained on the ground that the offenses of solicitation and attempt are analytically distinct in their elements and that there is no overt act, since solicitation is in the nature of preparation, rather than perpetration. Some cases, however, take the view .that even though a solicitation to commit a misdemeanor does not constitute an attempt to commit the misdemeanor, a solicitation to commit a felony may be punished as an attempt.”
The majority view is set forth in Gervin v. State (212 Tenn. 653, 656-657 [1963]) as follows: “ The weight of American authority holds, as a general proposition, that mere criminal solicitation of another to commit a crime does not constitute an attempt. 1 Wharton Criminal Law and Procedure, sec. 81 at 168 (1957) ; 1 Burdick, Law of Crime, sec. 106 at 117 (1946) ; Perkins, Criminal Law, 505, 508 (1957) ; Clark and Marshall, Crimes, see. 4.05 at 200 (6th ed. 1958) ; Model Penal Code, sec. 5.02 comment at 86 (Tent. Draft No. 10, 1960) ; 14 Am. Jur., Criminal Law, sec. 66 at 814 (1938) and 22 C. J. S. Criminal Law, sec. 73 at p. 225 (1961). The one significant exception to this position is, 1 Bishop Criminal Law, secs. 767, 768 at 543-546 (9th ed. 1923).”
To the same effect is State v. Blechman (135 N. J. L. 99, 101-102 [1946]) in which the court states: “ The solicitation constitutes a substantive crime in itself and not an abortive attempt to perpetrate the crime solicited. It falls short of an attempt, in the legal sense, to commit the offense solicited.”
In the area of what the Penal Law collectively describes as “ Sex Offenses ” (art. 130), there appears .to be no New York precedent spelling out the distinction between solicitation and attempt.
In the article dealing with adultery, in American Jurisprudence (2d ed., vol. 2, p. 966) the following is stated: “The weight of authority also is that solicitation is not an overt act leading up to the commission of the crime, and accordingly solicitation to commit adultery is not an attempt to commit the offense and is not indictable as such.”
In State v. Butler (8 Wash. 194, 195 [1894]), the Supreme Court of Washington reviewed a conviction for attempted adultery based on defendant’s efforts “by means of promises of the payment of money and by direct invitation by word of mouth * * * to persuade and procure ” the complainant, a married woman, to have sexual intercourse with the defendant.
In writing the unanimous opinion of the court, sustaining the granting of defendant’s motion in arrest of judgment, *661 Scott, J. said (p. 202): “ Now, it seems to us that solicitation to commit adultery is no part of the act of adultery itself, and consequently cannot be held to be an attempt. What is it? It involves the expression of a desire and a willingness on the part of one person to commit the act of adultery with another, and an attempt to get that person’s consent, but no more.”
And in another early case, Smith v. Commonwealth (54 Pa. 209, 213, 214 [1867]) the Supreme Court of Pennsylvania said: “ a rule of law which should make mere solicitation to fornication or adultery indictable would be an impractical rule, one that in the present usages and manners of .society would lead to great abuses and oppressions. * * * In a high moral sense it may be true that solicitation is an attempt, but in a legal sense it is not.” (To the same effect is Cole v. State, 14 Okla. Cr. Rep. 18 [1917]. See, also, State v. Bowles, 70 Kan. 821 [1905].)
Very close to the fact situation in the instant case is State v. Harney (101 Mo. 470 [1890]) in which the defendant on a public street asked a girl under 12 years of age to accompany him to a wooden shed .to engage in sexual intercourse. The State appealed from a judgment quashing the defendant’s indictment on a charge of attempted rape. (The Missouri statute defined sexual intercourse with a female child under 12 as rape.) Likewise, the statutes provided that “ every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act towards the commission of such offense, but shall fail in the perpetration thereof, shall.be punished.”
Brace, J. for a unanimous Supreme Court wrote in Harney (supra, p. 472): “ The only charge that can be evolved from the verbose reiterations of this indictment is, that the defendant, by verbal solicitations, tried to obtain the consent of a child under the age of twelve years to have sexual intercourse with him, and failed. However despicable and deserving of punishment such conduct may be, it falls short of the criminal offense attempted to be charged, to constitute which there must be an actual attempt to have intercourse with such child. So long as the evil purpose dwells in contemplation only it is beyond the grasp of these provisions of .the law.
“ The indictment, failing to charge any actual attempt upon the part of the defendant to have sexual intercourse with the child was properly quashed, and the judgment is affirmed.”
Accordingly the defendant cannot be charged with attempted sodomy and that portion of the charge is dismissed.
*662 The People urge that the testimony was sufficient to spell out a charge of endangering the welfare of a minor in violation of section 260.10 of the Penal Law.
Since the defendant is not .the complainant’s parent or guardian, the charge must fall within subdivision 1 of the section which makes it a crime to act in a manner likely to be injurious to the physical, mental or moral welfare of a child less than 16 years of age.
The defendant urges that in the absence of physical acts performed to the complainant (People ex rel. Tanis v. Benedict, 28 N. Y. S. 2d 202 [1941]) or in a situation which would impair a child’s morals (People ex rel. Kwiatkowski v. Trenkle, 169 Misc. 687 [1938]) the charge cannot be supported.
However, under the predecessor statute, section 483 of the Penal Law which punishes a person who willfully causes a child under 16 to be placed in a situation where its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, the courts have gone beyond the limited construction urged by defendant.
First, it is made clear by People ex rel. Barber v. Caminiti (28 N. Y. S. 2d 133 [1941]) that there need be no specific intent to injure or impair the child’s morals or proof of actual impairment of morals.
And in People v. Bergerson (17 N Y 2d 398 [1966]) it was held that the defendant, in affording minors with the facilities for a beer party in his home, had violated the statute.
Similarly in People v. Ammirati (42 Misc 2d 797 [1964]) the conviction was sustained on evidence that the defendant furnished pills known as ‘ ‘ goof balls ’ ’ to the complaining witness.
The defendant in this case submits that the child was “ flippant, composed and did not display the effects of having been shocked by what took place, if such took place as he states.”
The court questions the implication that a complainant must react to an offer to commit sodomy with manifestations of shock, disgust or revulsion in order to spell out sufficient cause to hold the defendant to answer to the charge of endangering a minor’s welfare.
Perhaps in time society will develop an appropriate response to an invitation to engage in pederasty. However, it may well be doubted that a child of eight will be required to adopt an accepted form of acquiescence or refusal.
The court feels that the solicitation in question is well within the parameters of the activity forbidden by section 260.10 of the Penal Law as endangering the welfare of a child.
*663 We now come to the question of whether the alleged conduct of the defendant, failing to constitute an attempt to commit sodomy, but clearly spelling out the crime of endangering the welfare of a minor, also comprised criminal solicitation in the second degree.
By the terms of section 100.05 of the Penal Law, ££ a person is guilty of criminal solicitation in the second degree when, with intent that another person engage in conduct constituting a felony, he solicits, requests, commands, or importunes or otherwise attempts to cause such other person to engage in such conduct.”
The People contend that if the charges of attempted sodomy and endangering a minor’s welfare have not been supported by the People’s evidence, the court, in the alternative, should hold the defendant to answer to the crime of criminal solicitation.
The court holds that the solicitation is a separate, additional and not alternative offense, independent of and not necessarily incidental to the commission of the crime solicited, so as to escape .the exempting effects of section 100.20 of the Penal Law.
That section states that a person is not guilty of criminal solicitation when his solicitation is the kind of conduct necessarily incidental to perpetration of the crime. Under such circumstances, according .to the statute, when the solicitation £ ‘ is related to but separate from the crime solicited, ’ ’ the actor is guilty of the related and separate offense only and not of criminal solicitation.
By way of illustration, the commentary to the McKinney’s edition of the Penal Law (§ 100.20) posits the situation in which a public servant, A, seeks a bribe from B, in return for favorable official action. Such conduct is bribe receiving within the prohibition of section 200.10, as well as solicitation to commit bribery. According to the commentators, A may be convicted of bribe receiving only and not of criminal solicitation.
/Here the crime solicited was sodomy. The solicitation was mot necessarily incidental to the crime sought to be perpetrated. The crime charged was an effort to engage in deviate sexual intercourse with a child under 11. (§ 130.50.) Seeking the child’s consent is an independent offense. True, if the invitation had resulted in deviate intercourse, the solicitation would have merged into the completed crime of sodomy.
By its very language section 100.20 implies that the solicitation bore fruit in the form of a completed crime. Unless .this *664 is the correct interpretation of the language of the statute, an unsuccessful effort to commit a crime falling short of an attempt may escape the condemnation of the law.
In any event the court feels that this is a case in which the ‘ ‘ solicitation to commit a crime involves sufficient culpability to warrant criminal sanctions” (McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, p. 169).
The fact that the conduct in question also resulted in breach of another section of the Penal Law, namely, endangering the welfare of a minor is not sufficient to merge the solicitation with that offense. In any event, section 279 of the Code of Criminal Procedure permits joinder in one information of acts or transactions giving rise to more than one crime.
Finally, we face .the question of the impact of the infant’s unsworn testimony.
Section 392 of the Code of Criminal Procedure permits the court to receive the unsworn testimony of a child under 12, but forbids holding or convicting a person upon such testimony “ unsupported by other evidence.”
Here, the infant, after preliminary examination was not sworn. The court felt that administering the oath to a child of eight would be an empty gesture.
The futility of conformity with the letter but not the spirit of the law is illustrated by the holdings of the Court of Appeals in People v. Porcaro (6 N Y 2d 248 [1959]) and People v. Oyola (6 N Y 2d 259 [1959]). In the instant case, the court sought to evaluate the child’s testimony in the light of the supportive testimony of the child’s mother and the arresting officer.
The child’s testimony was detailed and explicit. He identified the defendant, repeated the defendant’s offer and described the surrounding circumstances clearly and convincingly.
The supporting testimony established defendant’s connection with the commission of .the crime. (People v. Downs, 236 N. Y. 306, 308 [1923]. People v. Smith, 45 Misc 2d 265 [1965].)
The supporting evidence required by section 392 of the Code Criminal Procedure meets the test of People v. Masiano (253 App. Div. 454 [1938]): “ something which would be evidence apart from the statute.”
As was pointed out in People v. Oyola (supra), the law explicitly requires a complainant’s testimony concerning the commission of certain sexual offenses to be corroborated. Although corroboration is not required in a case involving *665 impairment of a minor’s morals, the court should .scrutinize such testimony with special care.
In Porcaro (supra), Judge Van Voorhis noted the absence of circumstantial evidence attesting to the veracity of a 10-year-old child.
In People v. Sexton (187 N. Y. 495 [1907]) the Court of Appeals held that the unsworn testimony of children of nine and six before a Grand Jury might be received in evidence if the children exhibited sufficient intelligence to warrant such action and if .there was sufficient other evidence to sustain the indictment.
To the .same effect is People v. Ortiz (180 Misc. 879 [1943]).
People v. Tanaglea (241 App. Div. 823 [1934]) restates the proposition that unsworn testimony of a child under 12 may be received, but may he insufficient to convict unless “ corroborated or supported.”
The court will not attempt to differentiate between corroborative or supportive evidence. Suffice it to say that the child’s testimony was supported.
In summary, the defendant will stand trial on charges of criminal solicitation and endangering the welfare of a child. The charge of attempted sodomy is dismissed.